## Ford v. Perkins-Bowling Coal Corporation.

(Decided November 11, 1930.)

JESSE MORGAN and I. A. BOWLES for appellant.

H. H. SMITH and B. F. COMBS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by George W. Ford against his employer, Perkins-Bowling Coal Corporation, to recover for personal injuries, the trial court at the conclusion of the evidence directed the jury to return a verdict in favor of the defendant. Ford appeals.

Though affected by the provisions of the Workmen's Compensation Act, appellee had not elected to operate thereunder. In the circumstances the defenses of assumed risk and contributory negligence were not available, but

it was still necessary for appellant to prove actionable negligence on the part of appellee. Section 4960, Ky. St.; Horse Creek Mining Co. v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064.

A recovery was sought on the ground that appellant's injuries were due to appellee's negligence in failing to furnish him a safe place to work and safe and suitable appliances with which to work.

Briefly stated, appellant's evidence is as follows: At the time of the accident he was engaged in braking on an electric motor which was operated by Bill Hall, and it was his duty to couple and uncouple the mining cars, and he was subject to Hall's directions. Though he had had some experience as a miner, he had been engaged only a day or two in that particular work. Hall had told him that he had better not ride on the stirrup where it was customary for brakemen to ride, inasmuch as he was not used to the halls and it was not safe down there, but that he had better get on the bumper of the motor. After they had taken into the mines several empties and set some of them, they passed room No. 9. The man in that room told the motorman that he wanted him to pull the loaded car out and give him an empty as he came back. They took the empties to another part of the mine and left all but one which they brought back for the purpose of placing it in room No. 9. On approaching near that room the motorman told appellant to get off, uncouple the empty car from the motor, and scotch it; that they would then run into room No. 9, pull the loaded car out, couple it to the empty, and then push the empty into that room. Following the directions of the motorman, appellant got off, uncoupled the empty, and scotched it with a capboard, which was lying by the side of the track and had been used for the purpose. The capboard was about 18 inches long, an inch to two inches thick, and two or three inches broad. The place was gobbed up and he put the capboard under the wheel against the flange. The capboard would not lie down like it ought to. The end stuck up. He then rode on the motor or walked down to the switch a few feet away and threw the switch. The motorman then reversed his motor and started back. When the motor reached the switch point where appellant was standing, he placed one foot upon it, and while in this position the empty car came down and crushed his leg.

Tom Hall testified that the track was about in as good condition as could be expected when laid on steel ties. It would have been better if it had been laid on wooden ties. There was no ballast between the steel rails, but none was necessary. Bill Hall, the motorman, testified that he told appellant he would have to watch about riding on the stirrup. At the time of the accident he told appellant to uncouple the empty from the motor. For this purpose they generally used wood blocks called capboards. After the car was scotched he dropped down below the switch, and when appellant blew the whistle he reversed the motor and came back. After going about three feet the car struck the motor. He never saw the car, but heard it strike. As he passed over the switch the track moved a little. The switch point did not fit over right, and they had a track man to work on it and fix it. Sometimes he would work on it himself.

It is argued that the case should have gone to the jury because the entries were too narrow to permit appellant to ride on the stirrup where it was safe for him to ride, and on the further ground that the appliance furnished him for scotching the cars was insufficient for that purpose.

Appellant was not injured by coming in contact with the side of the entry, and it is at once apparent that the narrowness of the entry was not the proximate cause of his injury. The most that can be said is that bcause the entry was narrow at some places the motorman considered it less dangerous for appellant to ride on the bumper and so told appellant. In the circumstances the motorman's advice simply furnished appellant with an excuse for riding on the bumper. Notwithstanding his position, he would not have been injured had not the empty car broken loose and run down the track. It was appellant's duty to scotch the empty. The motorman did not tell him what to employ or how to do it. It was a simple job requiring no warning or instruction. Though it be true that the capboards were furnished for that purpose, and appellant was expected to use one of them, there was no evidence that they were not suitable or sufficient. Nor will the fact that the car broke loose justify the inference that such was the case, where it is just as probable that the capboard was improperly placed as that it was not suitable or sufficient for the purpose. There is no showing that appellee failed in any duty owing to appellant.

Therefore, the situation is one where appellant's injuries were due solely to his failure to scotch the car in such a way as to prevent it from breaking loose and running down the track, and not to any negligence on the part of appellee. It follows that the directed verdict was proper.

Judgment affirmed.